1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9   **CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

10

11   BARBARA HAMLIN,                )        Case No. CV 05-01769-JWJ
                                     )
12                      Plaintiff,   )        ORDER REMANDING ACTION
                                     )        FOR FURTHER PROCEEDINGS
13          vs.                      )
                                     )
14   JO ANNE B. BARNHART,            )
     Commissioner of the Social      )
15   Security Administration,        )
                                     )
16                      Defendant.   )
                                     )
17   _____

18          Plaintiff seeks review of the decision of defendant Commissioner of the

19   Social Security Administration, denying plaintiff's application for Disability

20   Insurance Benefits under Title II and Supplemental Security Income under

21   Title XVI of the Social Security Act.  As discussed below, this Court vacates the

22   decision of the Administrative Law Judge and remands this action to the

23   Commissioner for further proceedings.

24

25   **I.  SUMMARY OF DISTRICT COURT PROCEEDINGS**

26          On March 11, 2005, plaintiff Barbara Hamlin filed a "Civil Complaint"

27   for review of the proceedings before Commissioner of the Social Security

28   Administration (hereinafter "Complaint").  On April 7, 2005, the parties

1  consented, pursuant to 28 U.S.C. § 636(c), to proceed before United States

2  Magistrate Judge Jeffrey W. Johnson, and to have the Magistrate Judge

3  conduct any and all further proceedings in this case and order the entry of final

4  judgment.  On July 28, 2005, defendant filed an "Answer to Complaint," along

5  with a copy of the Certified Administrative Record (hereinafter "CAR") of the

6  administrative proceedings in this matter.  On January 23, 2006, the parties

7  filed a Joint Stipulation addressing their respective claims.

8      This matter is now deemed under submission and ready for decision.

9

10          **II.  FACTUAL BACKGROUND**

11  **A.    Summary of Administrative Proceedings**

12      Plaintiff filed applications for Disability Insurance Benefits on October

13  21, 2002, and Social Security Supplemental Security Income on February 23,

14  2003.[1]  (CAR 247-50, 95-98.)   The applications alleged an onset of disability

15  from February 6, 2002.  (CAR 95, 247.)  Plaintiff's applications were denied.

16  (CAR 20, 251-54.)  Plaintiff subsequently filed a request for hearing before an

17  Administrative Law Judge.  (CAR 80.)   On September 8, 2003, Administrative

18  Law Judge Alexander Weir, III (hereinafter, the "ALJ") commenced a hearing;

19  plaintiff appeared with counsel and testified on her own behalf.  (CAR 31-74.)

20  Additionally, a vocational expert provided testimony regarding plaintiff at the

21  September 8, 2003 hearing.  (CAR 58-74.)  On January 21, 2004, the ALJ

22  issued an opinion denying benefits.  (CAR 17-29.)  On January 11, 2005, the

23  Appeals Council denied review, thus making the decision of the ALJ the final

24  decision of the Commissioner in this matter.  (CAR 5-8.)  See 20 C.F.R. §

25  404.900(a)(5).

26

27      [1] The Protective Filing Worksheet indicates that plaintiff protectively filed an

28  application for Disability Insurance Benefits on October 9, 2002.  (CAR 99.)

**B.    Relevant Facts Regarding Plaintiff's Personal History, Medical Condition and Treatment**

Born on September 1, 1948, plaintiff was fifty-five years old at the time of her administrative hearing.  (CAR 21, 95.)  Plaintiff has completed high school, and has past work experience as a clerical receptionist, eligibility interviewer, safety advisor and typist.  (CAR 108, 117, 52-53.)  Plaintiff alleges that she became disabled on February 6, 2002, due to spinal surgery, a ruptured back disc, hip pain, depression, difficulty walking and difficulty using her hands.  (CAR 95, 107-8.)

On January 22, 2002, plaintiff underwent an X-ray of her lumbosacral spine with Yiuki Ko, M.D.  (CAR 177.)  The X-ray revealed that plaintiff had moderate narrowing of the intervertebral disc space at L5-S1 with spur formation and subchondral sclerotic changes due to disc degeneration, D.J.D. (Degenerative Joint Disease) changes of the hip, and interfacet joint degeneration at L5-S1 on both sides.  (CAR 177.)

On February 8, 2002, Robert Meth, M.D. consulted with plaintiff. (CAR 240.)  Dr. Meth reported that plaintiff had back pain, and pain in her right leg. (CAR 240.)  Dr. Meth also indicated that plaintiff could walk, bend and lift. (CAR 240.)

On February 15, 2002, plaintiff went to physical/occupational therapist R. Katz, RPT with complaints of back pain.  (CAR 237-38.)  The therapist reported that plaintiff could walk only short distances and had possible cord compression.  (CAR 237.)

On February 18, 2002, plaintiff began treatment with Michael Acord, M.D.  (CAR 239.)  Dr. Acord found that plaintiff's inability to walk was progressive, and noted plaintiff's complaints of urinary frequency.  (CAR 239.) Dr. Acord further stated that an MRI of plaintiff's spine and head was urgent. (CAR 239.)

- 3 -

1    On February 27, 2002, plaintiff returned to Dr. Ko's office for
2  evaluation; he underwent an MRI of the brain and cervical spine.  (CAR 171-
3  72, 241-43.)  Dr. Ko reported that plaintiff had several small non-specific
4  lesions scattered in the white matter of her bilateral cerebral hemispheres as a
5  result of microangiopathic ischemia or tiny lacunar infractions, as well as white
6  matter changes and/or small vessel disease.  (CAR 171, 241.)  Dr. Ko
7  summarized the MRI findings as follows: "marked spinal stenosis is seen from
8  the level of C3-C4 to C6-C7 due to a combination of disc protrusion or
9  herniation with ambrased osteophytes[,] and the spinal cord is compressed
10  especially worse at the level of C4-C5 with increased signal intensity in the
11  spinal cord itself."  (CAR 172, 242.)

12    On February 28, 2002, plaintiff consulted with a disability analyst who
13  reported that plaintiff could perform medium work and occasionally climb and
14  crawl, but should avoid repetitive overhead functions.  (CAR 142.)  The
15  disability analyst concluded that plaintiff could return to her past work as an
16  eligibility worker.  (CAR 142.)

17    On March 18, 2002, plaintiff underwent an MRI of her lumbar spine.
18  (CAR 170.)  W.G. Castelo, M.D. reported the following findings: evidence of
19  degenerative change at L5-S1; presence of anterior and posterior osteophytes;
20  narrowed disc space and decreased signal intensity of the intervertebral disc
21  consistent with desiccation and degeneration; reactive high signal changes are
22  visualized at the vertebral endplates; and right posterolateral disc protrusion
23  narrowing on the right neutral foramen, and appearing to impinge on the
24  exiting nerve root.  (CAR 170, 243.)

25    On April 4, 2002, plaintiff went to William D. Sherman, M.D., at Los
26  Angeles Medical Center with the following complaints: difficulty walking, lack
27  of strength in her right side, weakness in her right hand, and pain in her back,
28  right thigh, calf and neck.  (CAR 167.)  Additional complaints of loss of

sensation in plaintiff's fingers, tingling in her right arm and urinary urgency were noted.  (CAR 167.)  Dr. Sherman's impressions were that plaintiff had a cervical myelopathy secondary to cervical cord compression at C4-C5 and C5-C6.  (CAR 163, 167.)  Dr. Sherman strongly recommended plaintiff undergo an anterior cervical discectomy at C4-5 and C5-6.  (CAR 168.)  On April 9, 2002, plaintiff sought a consult with Dr. Sherman to evaluate her need for surgery.  (CAR 169.)

On August 7, 2002, plaintiff was admitted at Los Angeles Medical Center for surgery (cervical discectomy).  (CAR 155-157.)  Dr. Sherman examined plaintiff and noted complaints of difficulty walking, weakness in her hands, pain in her back, right thigh, calf and neck.  (CAR 155.)  Dr. Sherman further noted plaintiff's loss of sensation in her ring and little finger on her left hand, some tingling in her right arm, in addition to urinary urgency.  (CAR 155.)  Dr. Sherman indicated that plaintiff had undergone treatment for depression in the past, but that currently plaintiff feels her condition is stable. (CAR 155.)

Dr. Sherman diagnosed plaintiff with cervical myelopathy, and indicated that plaintiff had a spastic gait, decreased sensation in her lateral fingers, and was three percent hyperreflexic in her upper and lower extremities.  (CAR 157.) Dr. Sherman reported that plaintiff had cervical cord compression at C4-C5 and C5-C6.  (CAR 157.)  Plaintiff underwent an anterior cervical discectomy at C4-C5 and C5-C6 with a cadaver bone graft and synthes plate fixation.  (CAR 157.)  Dr. Sherman noted that "[p]ostoperatively, the [plaintiff] had minimal change in neurologic examination."  (CAR 157.)  Plaintiff was discharged from the Los Angeles Medical Center on August 9, 2002.  (CAR 157.)

On August 28, 2002, plaintiff under went an X-ray of her cervical spine with Kenneth Riemer, M.D. at Los Angeles Medical Center.  (CAR 154.) Results from the X-ray showed postfusion changes with anterior screws, plates

and disc plugs at the C4, C5 and C6 levels. (CAR 154.) Dr. Riemer noted no subluxation or bone destruction of the cervical spine. (CAR 154.)

On September 19, 2002, plaintiff underwent another X-ray examination at Los Angeles Medical Center. (CAR 151.) Richard Kalinowski, M.D. noted the following impressions: interbody and anterior fusion at C4, C5 and C6, with a plate and five bone screws anteriorly and with intercalated discs at C4-C5 and C5-C6; normal alignment; and marked disc narrowing at C6-C7. (CAR 151.)

On November 25, 2002, plaintiff returned to Dr. Acord for a follow-up examination. (CAR 234.) Dr. Acord noted plaintiff's complaints of neck discomfort, but reported that plaintiff's hands were functioning much better. (CAR 234.)

On December 18, 2002, plaintiff underwent a physical/occupational therapy evaluation. (CAR 232.) Therapist Ce Ce Chin noted that plaintiff's current condition started six months to a year after her decompression surgery, and determined that plaintiff's key impairments were her inability to walk and stand, and her limited flexibility. (CAR 232.)

On January 16, 2003, orthopedist Anh-Tat Hoang, M.D. examined plaintiff at South Atlantic Medical Group. (CAR 194-200.) Plaintiff's primary complaints related to her neck, bilateral shoulders, back, right hip and right foot and toes. (CAR 194.) Plaintiff ambulated without an antalgic gait or discernible limp and performed squat/rise maneuvers to 50% of normal. (CAR 195-96.) Plaintiff completed heel-/toe-walk maneuvers fully and without difficulty. (CAR 196.) Dr. Hoang's impressions included: postoperative status of the cervical spine; low back pain with right radicular pain; and arthritis. (CAR 199.) Dr. Hong noted that plaintiff used a one point cane for support, but opined that it was not medically necessary. (CAR 199.) Dr. Hoang concluded that plaintiff could lift and carry fifty pounds occasionally, and

1    twenty-five pounds frequently.  (CAR 199.)  Dr. Hoang also determined that

2    plaintiff could stand and walk six hours in an eight-hour day and sit without

3    limitation.  (CAR 199.)

4            On February 13, 2003, Dr. Acord performed a follow-up examination of

5    plaintiff, and diagnosed plaintiff with lumbar radiculopathy.  (CAR 228.)

6    Dr. Acord referred plaintiff to Cuong Pho for physical/occupational therapy.

7    (CAR 228.)  On February 19, 2003, plaintiff underwent a physical evaluation

8    by Cuong Pho.  (CAR 229.)  Cuong Pho noted plaintiff's walking limitations

9    and reports of sleep disturbance, but reported plaintiff's prognosis was good.

10   (CAR 229.)

11           On February 27, 2003, Ernest Bagner III, M.D. conducted a complete

12   psychiatric evaluation of plaintiff at South Atlantic Medical Group.  (CAR

13   201-204.)  Dr. Bagner described plaintiff as a fifty-four year old female with a

14   history of depressive symptoms, but noted that she appeared better.  (CAR

15   203).  Plaintiff's speech was intact and her thought processes were tight.  (CAR

16   202.)  Plaintiff was alert and oriented to person, place and time.  (CAR 203.)

17   Dr. Bagner opined that plaintiff would have no limitations interacting with

18   supervisors, peers or the public, handling normal stress at work, maintaining

19   concentration and attention, completing simple or complex tasks, or

20   completing a normal workweek without interruption.  (CAR 203.)  Dr. Bagner

21   determined that any restrictions on plaintiff's activity should be determined by

22   plaintiff's medical physicians.  (CAR 203.)

23           On February 28, 2003, DDS (Disability Determination Service)

24   physician, K. Reigan completed a Physical Residual Functional Capacity

25   Assessment of plaintiff.  (207-14.)  It was determined that plaintiff could

26   occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-

27   five pounds, sit, stand and/or walk for a total of six hours in an eight-hour

28   workday, and that plaintiff's ability to push or pull was unlimited, but she

1    could only occasionally climb or crawl.  (CAR 208-9.)  Plaintiff's ability to

2    reach overhead was limited, so it was noted that plaintiff should try and avoid

3    repetitive overhead movements.  (CAR 210.)

4         On April 2, 2003, plaintiff presented to Paul Kim M.D. with complaints

5    of pain all over her body, stiffness in her hands and difficulty sleeping.  (CAR

6    246.)  On May 6, 2003 and August 11, 2003, plaintiff returned to Dr. Kim for

7    follow-up examinations.  (CAR 245.)  Dr. Kim reported plaintiff's complaints

8    of being "really stressed," and wanted to attempt to taper plaintiff's Vicodine

9    use.  (CAR 245.)

10        On May 7, 2003, Dr. Acord re-evaluated plaintiff.  (CAR 218-24.)  The

11   doctor completed a cervical spine impairment questionnaire for plaintiff.  (CAR

12   218.)  He diagnosed plaintiff with a right lumbar radiculopathy secondary to a

13   herniated disc and central cervical spinal stenosis.  (CAR 218.)  Dr. Acord

14   reported that plaintiff suffered decreased flexion at clerical and lumbar spine,

15   reflex changes at all of her limbs, and spasticity of her lower extremities.  (CAR

16   218.)  He noted that plaintiff's prognosis was poor, and that plaintiff's MRI

17   supported his findings.  (CAR 218-19.)   Dr. Acord opined that plaintiff's

18   impairment would limit her ability to keep her neck in a constant position, and

19   that plaintiff could only sit for two hour periods, and walk for only one hour.

20   (CAR 220-21.)  Dr. Acord indicated that plaintiff could occasionally lift 5 lbs,

21   but could not carry anything.  (CAR 221.)  Dr. Acord found plaintiff capable of

22   functioning in a low stress environment, and opined that plaintiff's emotional

23   functioning could contribute to the severity of her condition.  (CAR 221-22.)

24   Dr. Acord noted that plaintiff was significantly limited, but not completely

25   precluded, from grasping, turning, and twisting objects, using her fingers and

26   hands for fine manipulations, and using her arms for reaching.  (CAR 223.)

27   Dr. Acord estimated that plaintiff would likely be absent from work as a result

28   of her impairments more than three times a month.  (CAR 224.)

**C.      Testimony Before the Administrative Law Judge**

      1.      <u>Plaintiff's Testimony</u>

Plaintiff appeared at the September 8, 2003 hearing before the ALJ and testified on her own behalf.  (CAR 32-57.)  Plaintiff testified that she last worked on February 6, 2002, but can no longer work on account of the pain she experiences in her neck, shoulders and leg.  (CAR 37.)  Plaintiff stated that her hands and fingers become numb and stiff, which condition prevents her from typing.  (CAR 37.)

Plaintiff testified that she underwent an MRI in February 2002, and was told her spine was compressing.  (CAR 38.)  Plaintiff stated that she had surgery in August 2002; after her surgery she falls less, but still needs her cane to steady herself.  (CAR 39, 45.)  Plaintiff also stated that at her January 2003 examination by a Social Security examiner, she was unable to stand on her heels and toes.  (CAR 43-44.)  She noted that she appeared with her cane at the appointment, as she needs it to walk.  (CAR 43.)

Plaintiff testified that she still experiences pain in her right back area, hip area, and down her leg.  (CAR 41.)  Plaintiff stated that she takes pain medication three times a day, but complains that the medication makes her tired.  (CAR 42.)  Additionally, plaintiff testified that her right hand has improved, but her left hand is worse.  (CAR 42.)  She stated that she has trouble picking up items, buttoning her clothes, opening things and writing.  (CAR 42.)  Plaintiff noted that she could write her name and use a fork and knife, but that she could not sew or thread a needle.  (CAR 45-46.)  Plaintiff testified that sitting for more than fifteen minutes intensifies her pain.  (CAR 43.)  Plaintiff stated that she spends most of her time at home, laying down and watching T.V. (CAR 44.)  Plaintiff also stated that she no longer sings in the church choir, and can only do little things around the house like dusting, picking up or an occasional load of laundry.  (CAR 47.)  Plaintiff still has a

1    drivers license, but drives only short distances.  (CAR 49.)

2        Plaintiff testified that she has never seen a psychiatrist or a psychologist,

3    but she was once diagnosed by her treating physican as having mild depression.

4    (CAR 49-50.)  She stated that she took Prozac for about a year.  (CAR 50.)

5    Plaintiff further testified that she received state disability benefits for a year,

6    but those benefits have now run out.  (CAR 51-52.)

7        2.    <u>Vocational Expert's Testimony</u>

8        Vocational Expert Ron Hatakeyama (hereinafter "VE") testified before

9    the ALJ at plaintiff's hearing on September 8, 2003. (CAR 52-74.)  The VE

10   testified that plaintiff has past relevant work experience as a clerk typist and a

11   receptionist, which are classified as semi-skilled with an SVP (Specific

12   Vocational Preparation) of 4.  (CAR 52-53.)  The VE further testified that

13   plaintiff worked as a safety adviser, which is classified as light work with an

14   SVP of 7.  (CAR 53.)  The VE noted that plaintiff also worked as an eligibility

15   worker, which is classified as sedentary work/skilled work with a SVP of 6.

16   (CAR 53.)

17       The ALJ presented the VE with a hypothetical individual of plaintiff's

18   age, education and work background, with the following limitations: capable of

19   medium work, has limited use of her hands, and can use fine motor ability or

20   fingering occasionally.  (CAR 57.)  The VE testified that such an individual

21   would be capable of performing plaintiff's past relevant work as a receptionist

22   or eligibility worker, but not as a clerk typist or safety advisor.  (CAR 57.)

23       The ALJ then presented the VE with a second hypothetical individual

24   who is limited to light work, but has all the other limitations provided in the

25   first hypothetical.  (CAR 158.)  The VE testified that such an individual would

26   also be capable of performing plaintiff's past relevant work as a receptionist or

27   eligibility worker.  (CAR 58.)  The ALJ presented the VE with a third

28   hypothetical individual with the same limitations as presented in the two prior

1    hypotheticals, but who is limited to sedentary work .  (CAR 58.)  The VE

2    testified that such an individual could perform plaintiff's past relevant work as

3    either a receptionist or as an eligibility worker.  (CAR 58.)

4        Plaintiff's counsel then presented the VE with a hypothetical individual

5    who could sit for two hours in an eight-hour day and stand for one hour in an

6    eight-hour day, and could lift no more than five pounds occasionally.  (CAR

7    67.)  The VE testified that such an individual would be unable to perform any

8    of plaintiff's past relevant work.  (CAR 67.)  Plaintiff's counsel then presented

9    the VE with a second hypothetical individual who had moderate limitations

10   (significantly limited but not precluded) in the areas of grasping, turning,

11   twisting, fine manipulation and reaching.  (CAR 68.)  The VE again testified

12   that such an individual would be unable to perform any of plaintiff's past

13   relevant work.  (CAR 68.)

14       The ALJ then asked the VE if he was changing his opinion in regard to

15   the earlier hypothetical persons who could perform plaintiff's past relevant

16   work, and the VE indicated that as to hypothetical persons one, two and three,

17   those persons could not work as a receptionist, but could do the work of an

18   eligibility worker.[2]  (CAR 70-71.)  The ALJ then presented the VE with a

19   fourth hypothetical person, who is capable of limited work, limited to both

20   occasional fingering (which is fine motor ability), and to occasional gripping

21   and grasping.  (CAR 72-73.)  The VE testified that such a person could not do

22   any of plaintiff's past relevant work.  (CAR 73.)  Lastly, the ALJ presented the

23   VE with a fifth hypothetical person who is limited to sedentary work and has

24

25       [2]On September 12, 2003, the VE sent a letter to the ALJ notifying the ALJ that
26   during the September 8, 2003 hearing the VE incorrectly stated the duties of an
     eligibility worker and a receptionist.  (CAR 147.)  Contrary to the testimony presented,
27   both a receptionist and an eligibility worker require frequent reaching, frequent handling,
28   and occasional fingering.  (CAR 147.)

the same limitations as hypothetical person number four. (CAR 73.) The VE testified that such a person could not do plaintiff's past relevant work. (CAR 73.)

**D.     The ALJ's Decision**

On January 21, 2004, the ALJ issued a decision denying plaintiff's application for benefits. (CAR 20-29.) The ALJ determined that plaintiff has a history of herniated cervical discs, spinal fusion surgery and osteoarthritis that qualify as a "severe" impairment within the meaning of the Regulations (20 CFR 404.1521 and 416.921). (CAR 28.) However, the ALJ concluded that these impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (CAR 28.) The ALJ also found that plaintiff's allegations regarding her limitations were not credible, and that she retains the functional capacity to perform the full range of medium work. (CAR 28.)  Thus, the ALJ determined that plaintiff's impairments do not prevent her from performing her past relevant work as an eligibility worker, receptionist, safety adviser and clerk typist. (CAR 28.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act, and that plaintiff is not entitled to a Period of Disability, Disability Insurance Benefits, nor eligible for Supplemental Security Income under Sections 1602 and 1614(a)(3)(A) of the Social Security Act. (CAR 28-29.)

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405 (g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's  (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that findings are based on legal error or are not supported by substantial evidence in

1  the record, the court may reject the findings and set aside the decision to deny

2  benefits.  See McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002);

3  Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v.

4  Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

5      "Substantial evidence is more than a scintilla, but less than a

6  preponderance."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  It is

7  "relevant evidence which a reasonable person might accept as adequate to

8  support a conclusion."  (Id.)  To determine whether substantial evidence

9  supports a Commissioner's findings, the reviewing court "must review the

10  administrative record as a whole, weighing both the evidence that supports and

11  the evidence that detracts from the Commissioner's conclusion."  (Id.)  "If the

12  evidence can reasonably support either affirming or reversing," the reviewing

13  court "may not substitute its judgment" for that of the Commissioner.

14  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

15

16              **IV.  THE FIVE-STEP ANALYSIS**

17      A disability claimant must show that a medically determinable physical

18  or mental impairment prevents the claimant from engaging in substantial

19  gainful activity and that the impairment is expected to result in death or to last

20  for a continuous period of at least twelve months.  Reddick, 157 F.2d at 721;

21  42 U.S.C. § 423 (d)(1)(A).

22      Disability claims are evaluated according to the five-step procedure

23  described below.  See Bowen v. Yucker, 482 U.S. 137, 140-42, 107 S. Ct.

24  2287, 96 L. Ed. 2d 119 (1987); Reddick, 157 F.3d at 721; Lester v. Chater, 81

25  F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); 20 C.F.R §§

26  404.1520, 416.920.

27      **Step one:**  Is the claimant engaging in substantial gainful activity?  If so,

28  the claimant is found not disabled.  If not, proceed to step two.

1  **Step two:** Does the claimant have a "severe impairment?"  If so, proceed
2  to step three.  If not, then a finding of not disabled is appropriate.

3  **Step three:**  Does the claimant's impairment or combination of
4  impairments meet or equal an impairment in 20 C.F.R., Part 404, Subpart P,
5  Appendix 1 (hereinafter "the Listings")?  If so, the claimant is automatically
6  determined disabled.  If not, proceed to step four.

7  **Step four:**  Is the claimant capable of performing his past work?  If so,
8  the claimant is not disabled.  If not, proceed to step five.

9  **Step five:**  Does the claimant have the residual functional capacity to
10 perform any other work?  If so, the claimant is not disabled.  If not, the
11 claimant is disabled.
12 Lester, 81 F.3d at 828 n.5.

13     "Severe," (at step two) means any impairment or combination of
14 impairments that significantly limits the physical or mental ability to perform
15 basic work activities.  "Residual functional capacity" ("RFC") is what a
16 claimant can still do despite existing "exertional" (i.e, strength related) and
17 "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 ns.5-6
18 (9th Cir. 1989).  Nonexertional limitations restrict ability to work without
19 directly limiting strength, and include mental, sensory, postural, manipulative
20 and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir.
21 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. §404.1569a(c).[3]

22     A claimant has the burden, through step four, of proving inability to

23 _____

24     [3]Nonexertional limitations include difficulty in one or more of the following:
25 functioning because of nervousness, anxiety or depression, maintaining attention or
   concentration; understanding instructions; seeing or hearing, tolerating physical features
26 of a work setting; and manipulative or postural functions (e.g. reaching, handling,
   stooping or crouching).  See 20 C.F.R. § 404.1569a(c)(1).  Pain may be either an
27 exertional or nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler, 765
28 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1    perform past relevant work.  Reddick, 157 F.3d at 721; Drouin v. Sullivan, 966

2    F.2d 1255, 1257 (9th Cir. 1992).  If this burden is met, a prima facie case of

3    disability is established and the burden shifts to the Commissioner at step five

4    to establish that the claimant can perform alternative work.  Reddick, 157 F.3d

5    at 721; Drouin, 966 F.2d at 1257; 20 C.F.R. §§ 404.1520, 416.920.  The

6    Commissioner can meet this burden by reference to the Medical-Vocational

7    Guidelines ("Grids") at 20 C.F.R. Part 404, Subpart P, Appendix 2, or by

8    relying on vocational expert ("VE") testimony.  Osenbrock, 240 F.3d at 1162

9    (citing Desrosiers v. Secretary, 846 F.2d 573, 576-77 (9th Cir. 1988)).  If VE

10   testimony is used, "the VE must identify a specific job or jobs in the national

11   economy having requirements that the claimant's physical and mental abilities

12   and vocational qualifications would satisfy." Osenbrock, 240 F.3d at 1162-63.

13

14                                **V.   DISCUSSION**

15   **A.     The ALJ's Evaluation**

16          The ALJ found at step one that plaintiff is not engaged in substantial

17   gainful activity.  (CAR 28.)  Next, the ALJ determined that plaintiff has a

18   history of cervical disc herniation, cervical spine fusion and osteoarthritis which

19   are "severe" impairments within the meaning of the regulations, but found at

20   step three that plaintiff's impairments do not meet or medically equal one of

21   the listed impairments in Appendix 1, Subpart P Regulation No. 4.  (CAR 28.)

22   At step four, the ALJ found that plaintiff retains the functional capacity to

23   perform her past relevant work as a clerk typist, safety advisor, receptionist or

24   eligibility worker.  (CAR 28.)  Thus, the ALJ concluded that plaintiff is not

25   disabled as defined by the Social Security Act.  (CAR 28-29.)

26          The parties have stipulated that the following issue is in dispute, to wit:

27                 Whether the ALJ's failure to credit the treating source evidence of

28                 a lumbar spine impairment, from steps two through four,

1    constitutes legal error and is supported by substantial evidence.

2    (Joint Stipulation, p. 3.)

**B.    Treating Physicians**

3

4        The opinion of a treating doctor generally should be given more weight

5    than opinions of doctors who do not treat the claimant.  <u>Lester v. Chater</u>, 81

6    F.3d 821, 830 (9th Cir. 1996).  If the treating doctor's opinion is not

7    contradicted by another doctor, it may be rejected only for "clear and

8    convincing" reasons supported by substantial evidence in the record.  <u>Id.</u> at 830

9    (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Even when

10   the treating doctor's opinion is contradicted by the opinion of another doctor,

11   the ALJ may properly reject the treating doctor's opinion only by providing

12   "'specific and legitimate reasons' supported by substantial evidence in the

13   record for doing so."  <u>Id.</u> (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir.

14   1983)).  The opinion of an examining physician is, in turn, entitled to greater

15   weight than the opinion of a nonexamining physician.  <u>Lester</u>, 81 F.3d at 830;

16   <u>Gallant v. Heckler</u>, 753 F.2d 1450 (9th Cir. 1984).

17       Plaintiff's treating physician, Dr. Acord, concluded that plaintiff had

18   right lumbar radiculopathy secondary to a herniated disc and central cervical

19   spinal stenosis.  (CAR 218.)  Dr. Acord further reported that plaintiff had

20   difficulty ambulating, urinary frequency and some incontinence.  (CAR 219.)

21   The ALJ found that these diagnoses were contradicted by the findings of

22   orthopedist Anh-Tat Hoang, M.D., and the State Agency medical consultant.

23   (CAR 26-27, 194-200, 207-14.)  Thus, in adopting the findings of the latter

24   physicians, the ALJ was required to provide "'specific and legitimate reasons'

25   supported by substantial evidence in the record" for rejecting the treating

26   physician's opinions.  <u>Lester</u>, 81 F.3d at 830.  The ALJ's stated reason for

27   rejecting Dr. Acord's opinion was that "Dr. Acord's opinion is not supported

28   by, and is actually contradicted, by the objective medical evidence of the

1   record." (CAR 26.) The ALJ based this finding on the fact that plaintiff's MRI

2   did not show any disc herniation. (CAR 26.) However, the MRI showed

3   plaintiff had "spinal stenosis from level C3-C4 to C6-C7 due to a combination

4   of disc protrusion or <u>herniation</u> with ambrased osteophytes," and Dr. Acord

5   specifically noted that plaintiff's MRI supported his findings. (CAR 26, 242.)

6   Additionally, the ALJ noted Dr. Acord's reports as to plaintiff's gait and her

7   complaints were inconsistent with other examining physicians; however, the

8   ALJ failed to present sufficient specific and legitimate reasons for rejecting Dr.

9   Acord's opinion. (CAR 26.) Thus, the ALJ's conclusory statement is

10  insufficient to satisfy the ALJ's requirement to present specific and legitimate

11  reasons for rejecting a treating physician's opinion.

12  **D.    Remedy.**

13        The decision whether to remand for further proceedings or order an

14  immediate award of benefits is within the district court's discretion. <u>Harman v.</u>

15  <u>Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose

16  would be served by further administrative proceedings, or where the record has

17  been fully developed, it is appropriate to exercise this discretion to direct an

18  immediate award of benefits. <u>Id.</u> at 1179 ("the decision of whether to remand

19  for further proceedings turns upon the likely utility of such proceedings").

20  However, where there are outstanding issues that must be resolved before a

21  determination of disability can be made, and it is not clear from the record that

22  the ALJ would be required to find the claimant disabled if all the evidence were

23  properly evaluated, remand is appropriate. <u>Id.</u>

24        Here, this Court has concluded that the ALJ failed to properly consider

25  the opinions of plaintiff's treating physician, Dr. Acord. Accordingly, remand

26  is necessary so that further administrative proceedings may be conducted.

27  Specifically, on remand, the ALJ should consider the findings and conclusions

28  of Dr. Acord, and, in light of that evidence, determine whether plaintiff suffers

1  from a disability as defined by the Social Security Act.  If the ALJ chooses to

2  reject the opinions of Dr. Acord, the ALJ must provide specific and legitimate

3  reasons for doing so.  In addition, the ALJ should reassess plaintiff's past

4  relevant work to adequately determine the relation of plaintiff's residual

5  functional capacity to the past work performed.  If it is determined on remand

6  that plaintiff is unable to perform any past relevant work, the ALJ should

7  proceed to step five to determine whether plaintiff has the ability to perform

8  specific jobs within plaintiff's abilities.

9

10                                    **<u>ORDER</u>**

11       Accordingly, IT IS HEREBY ORDERED that this action is remanded to

12  the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

13       IT IS FURTHER ORDERED that the Clerk of the Court serve copies of

14  this order and the Judgement herein on all parties or their counsel.

15

16  DATED:  September 21, 2006

17

18                                    _____/s/_____

19                                    JEFFREY W. JOHNSON
                                       United States Magistrate Judge

20

21

22

23

24

25

26

27

28